

David M. Fry
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0705 - Direct
dfry@shawkeller.com

October 23, 2018

**BY CM/ECF AND HAND DELIVERY**
The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

   Re: *Ethicon LLC, et al. v. Intuitive Surgical, Inc., et al.*, C.A. No. 17-871-LPS

Dear Judge Burke:

  Pursuant to the Court's October 17 Oral Order, I write on behalf Intuitive Surgical to request that the Court compel Ethicon to collect and produce responsive documents from two witnesses recently identified in Ethicon's amended initial disclosures.

### I. Factual Background

  Ethicon served its initial disclosures on November 20, 2017, identifying two of its marketing directors—Jennifer Nagy and Nitin Jain—as having knowledge of the "[b]ackground, history, marketing, use, sale, praise, and commercial success of Plaintiff's surgical staplers." Exh. A. Ethicon also identified Ms. Nagy and Mr. Jain as its only ESI custodians with marketing-related employment duties. *Id.* Ethicon's eight other ESI custodians were inventors of the patents-in-suit, including five witnesses who are named inventors on each of three related patents ("the Power Patents").

  Ethicon amended its initial disclosures on October 3, 2018—almost a year after its original disclosures and just six weeks before the close of fact discovery. Exh. B. Its amended disclosures identified, for the first time, two additional witnesses with knowledge regarding competition, marketing, and sales: Tom O'Brien, a senior-level marketing executive, and Dr. Elliott Fegelman, an Ethicon medical director. *Id.*; Exhs. C, D (LinkedIn profiles).

  After serving its amended disclosures, Ethicon informed Intuitive that it no longer intends to call as trial witnesses Mr. Jain and four of the five previously-listed Power Patent inventors (William Weisenburg, Jerome Morgan, Kyle Moore, and Mark Ransick). Thus, five of Ethicon's ten ESI custodians are now unlikely to have any role at trial. Instead, Ethicon will call Mr. O'Brien and Dr. Fegelman in their place. When Intuitive asked if Ethicon would collect and produce responsive documents from these new witnesses, Ethicon refused, claiming that "additional document collection and production from Mr. O'Brien and [Dr.] Fegelman would only result in documents that are duplicative of materials that have already been produced" because these witnesses were "identified for subject matter that is identical to that of" Ms. Nagy and Mr. Jain. Exh. E.

### II. Legal Standards

  Pursuant to the stipulated Order Governing the Standard for Discovery of Electronically Stored Information ("ESI") and Paper Documents (the "ESI Order") in this matter, each party was required to serve "a list of the Party's ten most likely custodians[.]" D.I. 83, ¶ 2(b). These lists were

SHAW KELLER LLP

The Honorable Christopher J. Burke
Page 2

to serve as "the presumptive limit on ESI discovery[,]" subject to modification on a "showing of good cause[.]" *Id.* The ESI Order does not define "good cause," but in general the good cause standard "hinges on diligence of the movant and not on prejudice to the non-moving party." *See Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 618 (D. Del. 2008) (discussing the good cause standard for modifying a scheduling order under Rule 16).

In addition to the parties' obligations under the ESI Order, Rule 34 requires a party to produce documents "within the scope of Rule 26(b) . . . in the responding party's possession, custody, or control" in response to requests for production. Fed. R. Civ. P. 34(a)(1), (b)(2)(B). The ESI Order imposes a "presumptive limit *on ESI discovery*[,]" but it imposes no limits on a party's obligation to collect and produce other responsive documents. D.I. 83, ¶ 2(b) (emphasis added). Thus, a party may not refuse to collect and produce non-ESI documents simply because they were not in the files of its ESI custodians.

### III. Argument

#### A. There is good cause to require Ethicon to conduct custodial ESI collections from Mr. O'Brien and Dr. Fegelman.

The ESI Order required Ethicon to identify and collect documents from its "ten most likely custodians"—not simply the ones whose job responsibilities would be least impacted by the inconvenience of a custodial data collection. D.I. 83, ¶ 2(b). Ethicon's decision to call Mr. O'Brien and Dr. Fegelman as its trial witnesses (and not to call Mr. Jain or four of the Power Patent inventors) strongly suggests that Ethicon's original custodians were *not* the witnesses who were most likely to have discoverable information on the "[b]ackground, history, marketing, use, sale, praise, and commercial success of Plaintiff's surgical staplers." Exh. B.

Moreover, the fact that Mr. O'Brien and Dr. Fegelman were identified for the same subject matter as some of Ethicon's prior custodians does not—as Ethicon claims—indicate that additional document collection "would only result in documents that are duplicative of materials that have already been produced." Exh. E. To the contrary, their job titles and descriptions suggest the opposite. Unlike Mr. Jain and the Power Patent inventors, Mr. O'Brien is a high-level marketing executive with "broad experience in marketing, operations and product development[.]" Exh. C (identifying Mr. O'Brien's last two positions at Ethicon as "Vice President Global Strategic Marketing, Energy" and "Vice President Marketing & Endomechanical Platform Leader"). And the fact that Mr. O'Brien's name does not appear on the majority of Mr. Jain's or the Power Patent inventors' documents strongly suggests that any overlap with Ethicon's existing production is exaggerated.

Ethicon's argument is even weaker with respect to Dr. Fegelman. His LinkedIn profile states that he is a "Medical Director" at Ethicon, whose responsibilities include "New Product Development, Post-market Surveillance, [and] Evidence Generation"—not general marketing duties like Mr. Jain or purely engineering duties like the Power Patent inventors. Exh. D. Indeed, Dr. Fegelman's name appears on even fewer documents than Mr. O'Brien's, further suggesting that his documents are unlikely to overlap with those produced from Ethicon's prior ESI custodians.

In short, even if Ethicon properly designated Mr. Jain and the now-dropped Power Patent inventors in its original list of ESI custodians, there is a strong likelihood that Ethicon's new

SHAW KELLER LLP

The Honorable Christopher J. Burke
Page 3

witnesses have non-cumulative electronic documents and communications in their files. Intuitive diligently sought production of these materials as soon as Mr. O'Brien and Dr. Fegelman were identified, and Ethicon has offered no valid basis for refusing to produce them. Under these circumstances, Intuitive has established good cause to require Ethicon to conduct additional ESI collections from Mr. O'Brien and Dr. Fegelman. *See Confluent Surgical, Inc. v. HyperBranch Med. Tech., Inc.*, C.A. No. 17-688-LPS-CJB, Oral Order (D. Del. Aug. 23, 2018) (ordering plaintiffs to "search the custodial files" of an employee who "appear[ed] likely to have relevant electronic documents in his possession[,]" noting that "[t]he Court does not have enough information to determine that any such documents would be significantly cumulative of those in the possession of other proposed custodians") (Exh. F).

### B. Rule 34 requires Ethicon to collect and produce other responsive documents from Mr. O'Brien and Dr. Fegelman.

Rule 34 requires production of "designated documents *or* electronically stored information" within the scope of Rule 26(b) "in the responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a) (emphasis added), (b)(2)(B). Thus, an order limiting the scope of electronic discovery—like the ESI Order in this case—has no bearing on a party's obligation to collect and produce other responsive documents.

Ethicon has provided no justification for refusing to collect and produce documents from Mr. O'Brien and Dr. Fegelman, which are unquestionably in Ethicon's "possession, custody, or control" under Rule 34(a). Indeed, Ethicon has given no indication that it has even spoken with either witness about whether they have responsive documents in their files. Ethicon simply assumes—based on its characterization of the intended scope of their testimony—that their documents will be cumulative of what Ethicon has already produced. That assumption is wrong for the reasons set forth above.

Moreover, Intuitive will be severely prejudiced if Ethicon is allowed to call these witnesses at trial without collecting and producing their documents. By waiting until the last minute to disclose these witnesses and refusing to produce their documents, Ethicon asks Intuitive to depose them and prepare their cross-examinations without access to *any* of their contemporaneous documents and communications. If this approach were permissible, any large company could shield its trial witnesses from effective cross-examination by producing documents from lower-level employees, and then substituting its real trial witnesses near the end of fact discovery. This is not what Rule 34 requires, and it will not lead to a full and fair examination of the issues at trial.

*   *   *

Ethicon should not be permitted to use the late disclosure of its intended trial witnesses to shield their documents from discovery. Mr. O'Brien and Dr. Fegelman's job responsibilities strongly suggest that they have non-cumulative documents and communications in their files, and Intuitive diligently sought production as soon as these new witnesses were identified. Accordingly, there is good cause to require Ethicon to conduct additional ESI collections from Mr. O'Brien and Dr. Fegelman. Ethicon should also be required to comply with its Rule 34 obligation to collect and produce other responsive documents in these witnesses' files.

SHAW KELLER LLP
The Honorable Christopher J. Burke
Page 4

                                           Respectfully submitted,

                                           */s/ David M. Fry*

                                           David M. Fry (No. 5486)

cc:    Clerk of the Court (via hand delivery)
        All Counsel of Record (via CM/ECF and e-mail)